IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Roosevelt Myles,          )<br>                                         )<br>               Plaintiff,       )<br>                                         )<br>          v.                         )<br>                                         )<br> Anthony Wojcik, et al.,    )<br>                                         )<br>               Defendants.    ) | Case No. 1:23-cv-14280<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Defendants, the City of Chicago ("the City") and six Chicago police officers, move in this 42 U.S.C. § 1983 suit to bifurcate discovery and trial into two, sequenced phases: an individual liability phase limited to determining whether the individual defendants are liable for a constitutional violation followed by, if necessary, a second round of discovery and a second trial on whether the City is also liable under *Monell v. New York City Department of Social Services*, 436 U.S. 678 (1978). Also before the court is defendants' partially contested motion for entry of a confidentiality protective order governing discovery. For the following reasons, the court denies defendants' motion to bifurcate and grants in part and denies in part their motion for a confidentiality protective order.

### I. Background

***A. Claims and Procedural History***

Plaintiff Roosevelt Myles ("Myles") filed this lawsuit under 42 U.S.C. § 1983 against the City of Chicago and six Chicago police officers. He alleges that the officer defendants fabricated and falsified evidence used to convict him of a 1992 robbery and murder he did not commit. *See* Am. Compl. ("AC") ¶¶ 25–52, ECF No. 40. Myles spent 27 years in prison for the murder. AC ¶ 54. At the request of the prosecutor, the Circuit Court of Cook County vacated Myles' conviction just before a scheduled hearing on his claim of actual innocence. *See* AC ¶¶ 53–55 (date not given).

Myles' amended complaint has twelve counts, all but three of which are brought against the individual defendants. Myles brings the following § 1983 claims in counts I–VI: a due process claim for fabrication of evidence; a claim under *Brady v. Maryland,* 373 U.S. 83 (1963), for failure to disclose exculpatory evidence; a malicious prosecution and wrongful detention claim under the Fourth and Fourteenth Amendments; a conspiracy claim; and a failure to intervene claim. AC ¶¶ 85–123. In count VI, Myles pleads a *Monell* claim, alleging that the City is liable for the individual officers' constitutional violations. AC ¶¶ 125–44.

Counts VII–XII arise under Illinois law. Respectively, these counts assert a claim for malicious prosecution, a conspiracy claim, an intentional infliction of emotional distress claim, a claim that the individual defendants engaged in willful and wanton conduct, a state law *respondeat superior* claim against the City, and a state law indemnification claim against the City. *See* AC ¶¶ 144–69. Defendants have answered the amended complaint. Answers, ECF Nos. 62, 63. Discovery commenced in January 2024. *See* Min. Entry 1 (Jan. 23, 2024), ECF No. 54 (setting initial discovery schedule). Defendants filed the instant motion to bifurcate in April 2024. ECF No. 69.

**B. Alleged City Customs and Policies**

*Monell* holds that municipal liability under § 1983 cannot be based on a theory of *respondeat superior*. 436 U.S. at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Thus, an official policy of the defendant municipality, here the City of Chicago, must be shown to be the "moving force" behind the constitutional violation. *Id.* Under *Monell*, "[M]unicipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted). To impose liability under *Monell*, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the

2

(plaintiff's) injury." *Bryan Cnty. Bd. of Com'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 480–81 (1986)); *Monell*, 436 U.S. at 694.

In count VI of his amended complaint, Myles alleges that the following City customs and policies caused his wrongful incarceration:

> 133. As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence with the Chicago Police Department. In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.
>
> 134. As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the Chicago Police Department, officers (including the Defendants here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences. As a result of these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens

* * * *

> 136. The City of Chicago and its Police Department failed in 1985 and in the years prior to provide adequate training to Chicago Police Detectives and other officers in any of the following areas, among others:
>
> > a. The constitutional requirement to disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified in order to ensure that the evidence is made part of the criminal proceeding.
> >
> > b. The need to refrain from manipulation or potentially coercive conduct in relation to witnesses.
> >
> > c. The need to refrain from using physical violence, threats of violence, and psychological coercion to procure involuntary statements from suspects.
> >
> > d. The risks of wrongful conviction and the steps police officers should take to minimize risks.
> >
> > e. The risks of engaging in tunnel vision during investigation.
> >
> > f. The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

* * * *

> 138. The City's failure to train, supervise, and discipline its officers, including repeat offenders such as Defendants Wojcik and Rutherford effectively condones, ratifies, and sanctions the kind of misconduct that the Police Officer Defendants committed against Plaintiff in this case. Constitutional violations such as occurred in this case are encouraged and facilitated as a result of the City's practices and de facto polices, as alleged above.

AC ¶¶ 133–34, 136, 138.

## II. Bifurcation of Discovery and Trial

Defendants contend that bifurcation will expedite and simplify the resolution of this case and that they will be unduly prejudiced if *Monell* issues and individual liability issues are tried together. Myles opposes bifurcation, arguing that experience in similar suits stemming from a wrongful conviction have shown that the supposed efficiencies to be gained by bifurcating individual liability and *Monell* issues are illusory and that defendants will not be unduly prejudiced.

### A. Motion Standard

Under Federal Rule of Civil Procedure 42(b), "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Rule 42(B) permits a district court to "separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007) (citing *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999)). When deciding whether to order separate trials, "The court must balance considerations of convenience, economy, expedition, and prejudice, depending on the peculiar facts and circumstances of each case." *Houskins v. Sheahan,* 549 F.3d 480, 495 (7th Cir. 2008).

### B. Analysis

In this judicial district, municipalities often move for separate trials on individual liability and *Monell* issues. As explained by this court in *Bonds v. City of Chicago:*

> Bifurcation of *Monell* issues in § 1983 actions frequently expedites the disposition of the case, since the resolution of the claims against the individual officers may end the entire case (either because no infringement of plaintiff's constitutional

4

> rights is established or because the plaintiff is able to settle the case in a way that persuades him not to go further), after less complex discovery and a less complex trial. *Medina v. City of Chicago*, 100 F.Supp.2d 893, 895 (N.D. Ill. 2000); *see also Swanigan v. City of Chicago (Swanigan I)*, 775 F.3d 953, 963 (7th Cir. 2015), *aff'd after remand Swanigan v. City of Chicago (Swanigan II)*, 881 F.3d 577 (7th Cir. 2018) (commenting that "[t]he stipulation and stay of the *Monell* suit in this case achieved the goal of avoiding unnecessary complexity and effort").
>
> There are considerations that militate against bifurcation, however. There are circumstances where resolution of the claims against the individual officers does not eliminate the need for a trial of the *Monell* claim. *See Medina*, 100 F.Supp.2d at 896. And if, after discovery and a trial on the individual claims, it is necessary to begin discovery again and try the *Monell* claim, the result of the bifurcation will be a longer and more complex road to the case's disposition, including a second trial that is largely repetitive of the first. Moreover, there are non-economic benefits that flow from discovery (as well as a possible trial) of the *Monell* claim. Chiefly, an airing of the *Monell* claim through discovery assures transparency, and if problems in the City's policies and practices are revealed through discovery or trial, the likelihood of deterring future misconduct is significantly enhanced. *See generally Medina*, 100 F.Supp.2d at 896–97.

*Bonds v. City of Chicago*, 2018 WL 1316720, at *3 (N.D. Ill. Mar. 14, 2018) (Gottschall, J.).

Depending on the case's particular facts and circumstances, this court has granted as many motions to bifurcate (or stay) *Monell* discovery as it has denied. *Compare id.* (denying motion) and *Jackson v. City of Chicago* [*"Jackson II"*], 2017 WL 8199322 (N.D. Ill. Dec. 12, 2017) (same), with *Taylor v. Kachiroubas*, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013) (granting motion to bifurcate individual liability and *Monell* issues) and *Clarett v. Suroviak*, 2011 WL 37838, at *2 (N.D. Ill. Jan. 3, 2011) (staying *Monell* discovery).

In the case at bar, individual defendants argue that they will be "severely prejudiced" if *Monell* issues are tried jointly with questions of officer liability, owing to the "inevitable prejudice caused by the introduction at trial of evidence relating to numerous claims of alleged police misconduct that are not related to Plaintiff's case." Mot. To Bifurcate 18, ECF No. 69. Individual defendants raise legitimate concerns, but they raise them largely in a vacuum. At this early stage with virtually no discovery taken, this court knows very little about the facts and *Monell* claims as they are likely to be presented at trial. This court's experience has been that "the better time to evaluate that issue [of prejudice] is shortly before trial, when the court (and the parties) will have a much better understanding of the evidence and its relevance to the individual and *Monell* claims. At that point, the court will be in a much better position than it is

5

now to hear the parties on the subject of whether curative instructions to deal with any prejudice are likely to be effective." *Jackson II*, 2017 WL 8199322, at *3 (citing *Houskins*, 549 F.3d at 496). That holds true in this case where the court knows virtually nothing about the subjects that, in all likelihood, will drive the prejudice analysis once the trial picture becomes clear.

As for the economies and convenience of the parties, the City maintains that its indemnification obligations to individual defendants and its agreement to satisfy any judgment against them obviates the need for substantial exploration of Myles' *Monell* claims—claims for which discovery will be costly and ultimately unnecessary in the City's view. To illustrate the expenses it believes will be avoided, the City provides estimates of its *Monell* discovery costs in recent civil rights cases stemming from wrongful convictions. In each, the City's *Monell* discovery costs exceeded $1 million. *See* Mot. To Bifurcate 16–17. The court does not doubt that *Monell* discovery is likely to be costly and time-consuming for all parties. In his first set of requests for production of documents, Myles has asked the City to produce 20 years of homicide investigative files (1982–2002). *See* Mot. To Bifurcate Ex. E ¶ 75, ECF No. 69-5. No party disputes that responding to this request will be costly and time consuming or that the request is relevant to Myles' *Monell* claim. Indeed, the City has argued in similar cases that it is necessary for the plaintiff to compare a large number of police and other files to demonstrate a pattern of non-disclosures sufficient to support a *Monell* claim against it under *Brady*. *See DeLeon-Reyes v. Guevara*, 2019 WL 4278043, at *5–7 (N.D. Ill. Sept. 10, 2019) (describing the City's arguments and the courts' rulings in *Rivera v. Guevara*, No. 12-cv-4428, and *Fields v. City of Chicago*, No. 10-cv-1168).

Though *Monell* discovery will undoubtedly be costly, it also appears likely to be inevitable. The Seventh Circuit has made clear that discovery and trial on *Monell* issues may be appropriate even where a municipality has agreed to cover the individual defendants' damages and attorney fees. "[I]n some civil-rights cases, however, a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim. . . . District courts cannot prevent plaintiffs from pursuing potentially viable

6

*Monell* claims that seek additional equitable relief or are distinct from the claims against individual defendants." *Swanigan v. City of Chicago*, 775 F.3d 953, 962–63 (7th Cir. 2015) (citing *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir.2010)).

Myles does not seek equitable relief in his amended complaint. *See* AC 38–39. But he brings an independent *Monell* claim, meaning one that could impose liability upon the City even if a jury declines to hold the officer defendants individually liable for a *Brady* violation. Specifically, Myles alleges that exculpatory police reports were not produced before trial, if not due to the individual defendants' deliberate suppression, then due to the City's faulty recordkeeping customs and policies. *See* Resp. Opp'n. Mot. To Bifurcate 7–11, ECF No. 81. "A municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas*, 604 F.3d at 305 (alterations in original) (citing *Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986)). To the extent Myles asserts a factually independent *Monell* claim, his claim against the City will not necessarily be extinguished by a verdict in the individual defendants' favor, meaning that bifurcation is likely only to delay the inevitable costs of *Monell* discovery. *See Swanigan*, 775 F.3d at 934–35; *Thomas*, 604 F.3d at 305; *see also, e.g., Cage*, 2010 WL 3613981, at *2 (recognizing the validity of a similar claim under *Monell* and *Brady*).

Since Myles is pursuing an independent *Monell* claim, the balance of the economies and potential prejudice tips against bifurcation on the present record. It appears nearly impossible to disentangle discovery on Myles' independent *Monell* claim from individual liability discovery. *See Bonds*, 2018 WL 1316720, at *4. That is because discovery concerning individual defendants' liability for a *Brady* claim will almost certainly require discovery on the City's policies and customs surrounding the creation, processing, and disclosure of police reports and evidence. *See Bouto v. Guevara*, 2021 WL 5415151, at *3 (N.D. Ill. Nov. 19, 2021); *Cage*, 2010 WL 3613981, at *2. Defendants suggest no way to disaggregate discovery relevant to *Monell* from discovery relevant to individual defendants' liability under *Brady* and no way is apparent to the court.

After balancing the costs and benefits of bifurcation, as well as the limited information available on prejudice, the present record leads the court to conclude that bifurcation is more likely to prolong and increase the overall costs of this litigation than it is to produce economies for the parties. Defendants' motion to bifurcate is therefore denied. Defendants remain free, however, to ask the court to revisit their request to bifurcate once trial is imminent and a clearer picture has emerged, allowing the court to assess the prejudice, if any, to individual defendants from holding a single trial on individual and *Monell* liability.

### III. Confidentiality Protective Order

Defendants move for entry of a protective order governing the designation and disclosure of confidential information during discovery ("confidentiality protective order"). ECF No. 91. Myles agrees such an order should be entered, but he objects to defendants' proposed changes to this court's model confidentiality protective order, primarily their proposals surrounding the contents of so-called "CR files" created by the City in the course of investigating citizen complaints against police officers.

*A. Governing Law*

"Parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order," and the Seventh Circuit has stated more than once that "as a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) (alterations omitted) (quoting *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978)). "Documents that affect the disposition of federal litigation are presumptively open to public view unless a statute, rule, or privilege justifies confidentiality." *City of Greenville v. Syngenta Crop Prot., LLC*, 764 F.3d 695, 697 (7th Cir. 2014) (ellipses omitted) (citing *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010)). In contrast, material exchanged during discovery that is not filed with, or otherwise considered by, the court "can be shielded from the public eye" in an appropriately tailored protective order. *Id.* (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)).

8

On motion and a showing of good cause, Federal Rule of Civil Procedure 26(c) permits the court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). As the moving parties, defendants bear the burden to show that good cause exists. *See Jepson*, 30 F.3d at 859–60; *Am. Tel. & Tel. Co.*, 594 F.2d at 596; *Williams v. City of Chicago*, 2022 WL 10105656, at *4 (N.D. Ill. Oct. 17, 2022). Regardless of whether the parties agree on the terms of a confidentiality protective order, "a district court is required to 'independently determine if good cause exists' before judicially protecting discoverable documents from third-party disclosure." *Walsh v. Alight Sols. LLC*, 44 F.4th 716, 726 (7th Cir. 2022) (alteration omitted) (quoting *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 795 (7th Cir. 2009)); *accord. Jepson*, 30 F.3d at 858. In considering whether good cause exists to issue a protective order limiting disclosure of unfiled discovery, the court "balances the harm to the party seeking the protective order against the importance of disclosure." *Williams*, 2022 WL 10105656, at *4.

**B. Analysis**

This court has issued three opinions ruling on the extent to which CR files maybe designated as confidential during discovery. *See Jackson v. City of Chicago* [*"Jackson I"*], 2017 WL 5478303 (N.D. Ill. Nov. 14, 2017); *Kuri v. City of Chicago*, 2014 WL 12932201 (N.D. Ill. June 11, 2014); and *Calhoun v. City of Chicago*, 273 F.R.D. 421 (N.D. Ill. 2011). Defendants contend that the trend in this district in the past few years has been to approve the changes to the model order they propose. The court has reviewed the decisions cited in defendants' motion and reply. *See, e.g.*, Mot. Protective Order 10, ECF No. 91 (collecting cases); Reply 4–5, ECF No. 106 (same). In nearly all of the decisions defendants cite, the court either entered an agreed protective order without comment or ruled summarily on an uncontested motion for entry of a protective order without articulating its reasons. *See, e.g., Abrego v. Guevara*, No. 23-cv-1740, min. order at 1 (N.D. Ill. Apr. 15, 2024); *Martinez v. Guevara*, No. 23-cv-1741, order at 1–2 (N.D. Ill. Apr. 26, 2024). These summary and uncontested decisions do not persuade this court to revisit *Jackson I*, *Kuri*, or *Calhoun*. *See Jackson I*, 2017 WL 5478303, at *2. Consistent with

9

those cases, the court rules as follows. To the extent the parties raise arguments not addressed by *Jackson I*, *Kuri*, and *Calhoun*, they are discussed in the following paragraphs:

1. Contrary to defendants' proposal, the definition of "confidential information" in paragraph two of the protective order must be identical to this court's model confidentiality protective order. The Illinois appellate court has held that CR files are public records subject to disclosure under the Illinois Freedom of Information Act. *Kalven v. City of Chicago*, 2014 IL App (1st) 121846, ¶¶ 26–31; *see also Peoria Journal Star v. City of Peoria*, 2016 IL App (3d) 140838, ¶¶ 15–17. Defendants have not shown good cause for designating entire CR files as confidential, as contrasted with specific portions of them disclosing information already covered by the definition of confidential information. Since "[t]he CR files are subject to public inspection; designating CR files disclosed through discovery as confidential would do little more than plug a hole in a levee that has already burst." *Kuri*, 2014 WL 12932201, at *2. Defendants' request to include various Illinois statutory references in the definition of confidential information is rejected for the reasons given in *Jackson I*, 2017 WL 5478303, at *3.

2. The following sentence at the end of paragraph two of the model order must be included in the protective order entered in this case: "Information or documents that are available to the public may not be designated as Confidential Information." The model order includes this sentence to address substantial First Amendment problems that would be created without it—problems concerning imposing an unconstitutional prior restraint on the free speech rights of the parties and their attorneys. *See Seattle Times,* 467 U.S. at 34; *Jepson*, 30 F.3d at 8589; *Am. Tel. & Tel. Co.*, 518 F.2d at 596; *see also Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009); *Jackson I*, 2017 WL 5478303, at *3–4. Defendants propose no less restrictive alternatives that would address the First Amendment problems their proposal would create.

3. Defendants propose adding the emphasized language to ¶ 3(a): "The marking 'CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER' shall be applied *prior to or*

*as soon as practicable after the documents are produced* or disclosed." Defendants propose this change to fix an oversight in the model order, namely the absence of protection from an inadvertent failure to designate discovery material as confidential. Myles raises concerns that defendants will be able retroactively to designate discovery material as confidential at any time.

To resolve this dispute, the court draws on Federal Rule of Evidence 502(b), which governs in the analogous situation of an inadvertent disclosure of material that is either privileged or attorney work product. To avoid waiver by inadvertent disclosure, Rule 502(b) requires the producing party to show, among other things, that "the holder of the privilege or protection took reasonable steps to prevent disclosure" and that "the holder promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b)(2)–(3) (numbering omitted). To address Myles' legitimate concerns, the court directs the parties to propose a revised version of ¶ 3(a) modeled on Rule 502(b).

4. Defendants' proposal to modify ¶ 4 to provide for a 14-day period in which to review a deposition transcript and make confidentiality designations is reasonable and is accepted. Defendants propose this change in response to concerns raised by plaintiffs' attorneys in other cases. Myles opposes a post-deposition review period here, but a 14-day period is unlikely to delay the litigation in any significant way.

5. Defendants' proposed ¶ 5(b)(9), requiring a witness to sign a form before being shown any document containing confidential information, is rejected. Defendants cite no rule or statute imposing such a requirement. Defendants contend that this proposed revision is intended to help all parties efficiently interview witnesses about confidential matters. They envision an attorney or investigator showing documents to a witness during an interview, so long as the witness first signs a form agreement pledging not to reveal confidential information. *See* Mot. Protective Order 15. Myles contends that imposing a signature requirement risks deterring witnesses from cooperating, particularly unsophisticated witnesses who may have knowledge of key underlying facts. Many such

witnesses, Myles argues, are likely to be intimidated by a request to sign a confidentiality agreement. Neither Myles nor defendants cite any real-world examples of how a witness has responded to a request to sign a confidentiality agreement before an interview. The court declines to speculate other than to find that Myles' concerns about intimidating an unsophisticated witness are not frivolous. Since defendants identify no specific witness they wish to interview using the procedure in proposed ¶ 5(b)(9), the balance of interests tips against including it at this juncture. If defendants encounter difficulties interviewing a witness as discovery progresses, they may move to modify the confidentiality protective order appropriately.

6. Defendants' proposed ¶ 6 gives them the right not only to designate sensitive personal information as confidential (meaning that opposing counsel cannot disclose it); it also allows defense counsel to "redact from all documents produced in discovery social security numbers, dates of birth, and information covered by the Juvenile Court Act, as well as, for security reasons, all references to a current or former individual police officer's confidential information about him/herself and his/her family, including but not limited to, social security number, home address, home and cellular telephone number(s), personal email address(es), the names of family members and the names of insurance beneficiaries." Proposed Order ¶ 6. Myles agrees that information such as social security numbers, birth dates, and names of police officers' family members should be kept confidential, but he contends that defendants are attempting to gain a litigation advantage by redacting potential witnesses' contact information.

In *Williams v. City of Chicago*, 2022 WL 10105656, at *9 (N.D. Ill. Oct. 17, 2022), Judge Fuentes explained why a broad redaction provision similar to proposed ¶ 6 gives the City a leg up by allowing defense counsel to freeride on the work product of plaintiff's attorneys. In short, if Myles' attorneys want to interview a witness they think might have relevant information based on their review of a CR file (or another discovery document), they are forced to request the witness's contact information from defendants.

12

Such a request alerts defense counsel of which witnesses their opponents are considering pursuing, giving defense counsel the option of trying to interview those witnesses first. *See id.* "Defendants' proposed screening procedure gives the adversary much more of a road map—as to a plaintiff's intentions and priorities—than the adversary otherwise would have had." *Id.* The court agrees. Proposed ¶ 6 functions a bit like a chess rule requiring one player to list for her opponent the pieces she is considering moving in the next few turns.

Given, however, that widespread disclosure of last known contact information may, in some circumstances, create safety concerns, the court will allow this information to be redacted, but it will require that at the time of production, producing counsel must provide opposing counsel with the redacted last known contact information, to be kept confidential from all persons other than attorneys who have appeared in this case. Such information, to be clear, is to be produced for attorneys' eyes only. This level of protection strikes a balance between defendants' legitimate concerns about the safety and security of law enforcement officials and their families and the need to protect the work product of Myles' attorneys.

## IV. Conclusion

For the reasons stated, defendants' motion to bifurcate is denied, and their motion for a confidentiality protective order is granted in part and denied in part. Within seven days, on or before November 22, 2024, the parties are instructed to confer and submit an agreed proposed confidentiality protective order consistent with the foregoing rulings.

Dated November 15, 2024         /s/ Joan B. Gottschall
                                United States District Judge